UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ANTONE THOMPSON | § | |
| | § | |
| v. | § | CIVIL NO. 4:25-CV-1123-SDJ |
| | § | |
| LOCKHEED MARTIN | § | |
| CORPORATION | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Lockheed Martin Corporation's Motion to Transfer Venue. (Dkt. #28). Lockheed asks that the Court transfer this case to the Northern District of Texas, Fort Worth Division. (Dkt. #28 at 5); *see also* (Dkt. #36). Plaintiff Antone Thompson opposes the motion. (Dkt. #34). Because Lockheed has demonstrated that the Fort Worth Division of the Northern District of Texas is a clearly more convenient venue for this action, the Court will grant the motion.

### I. BACKGROUND

This is an employment discrimination and retaliation case. Plaintiff Antone Thompson worked for Defendant Lockheed Martin Corporation at its Fort Worth aeronautics facility from October 2012 to April 2024. (Dkt. #16 ¶¶ 4, 181); (Dkt. #28 at 6). Thompson alleges that, during his employment with Lockheed in Fort Worth, he was discriminated against on the basis of his race, sex, age, disability, and military service. *See* (Dkt. #16). Thompson further alleges that he was retaliated against, and ultimately fired, for reporting this discrimination. *See* (Dkt. #16 ¶ 314). Lockheed denies the allegations. According to Lockheed, it fired Thompson for twice bringing a

1

gun onto the premises of its Fort Worth facility, in violation of company rules. *See* (Dkt. #27 at 5).

Thompson sued Lockheed in October 2025, *see* (Dkt. #1), and amended his complaint a few months later, *see* (Dkt. #16). He brings claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), Section 1981 of the Civil Rights Act of 1866, the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), and the Family and Medical Leave Act ("FMLA"). Shortly after Thompson filed his First Amended Complaint, (Dkt. #16), Lockheed moved to dismiss his claims under Federal Rule of Civil Procedure 12(b)(6). *See* (Dkt. #27). That motion remains pending before the Court. Lockheed now moves to transfer this case to the United States District Court for the Northern District of Texas, Fort Worth Division, under 28 U.S.C. § 1404(a). *See* (Dkt. #28 at 5).

## II. LEGAL STANDARD

Section 1404(a) permits the transfer of civil actions for the convenience of the parties and witnesses, and in the interest of justice, to other districts or divisions where the plaintiff could have properly brought the action. 28 U.S.C. § 1404(a). District courts have broad discretion in deciding whether to transfer a case under Section 1404(a), *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 311 (5th Cir. 2008) (en banc), and Section 1404(a) motions are adjudicated on an "individualized, case-by-case consideration of convenience and fairness," *Stewart*

2

*Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (cleaned up).

The party seeking a transfer under Section 1404(a) must show good cause. *Volkswagen II*, 545 F.3d at 315. In this context, showing good cause requires the moving party to "clearly demonstrate that a transfer is for the convenience of parties and witnesses [and] in the interest of justice." *Id.* (cleaned up). When the movant fails to demonstrate that the proposed transferee venue is "clearly more convenient" than the plaintiff's chosen venue, "the plaintiff's choice should be respected." *Id.* Conversely, when the movant demonstrates that the proposed transferee venue is clearly more convenient, the movant has shown good cause, and the court should transfer the case. *Id.* The "clearly more convenient" standard is not equal to a clear-and-convincing-evidence standard, but it is nevertheless "materially more than a mere preponderance of convenience." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-118-JRG, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

To determine whether a Section 1404(a) movant has demonstrated that the proposed transferee venue is "clearly more convenient," the Fifth Circuit employs the four private-interest and four public-interest factors first enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *Volkswagen II*, 545 F.3d at 315. The private-interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citation omitted).

The public-interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (alteration in original) (citation omitted).

Although these factors "are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Id.* Moreover, courts are not to merely tally the factors on each side. *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013). Instead, courts "must make factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of clearly more convenient." *Quest NetTech*, 2019 WL 6344267, at *7 (cleaned up); *see also In re Radmax*, 720 F.3d at 290 (holding that courts abuse their discretion when they deny transfer solely because the plaintiff's choice of forum weighs against transfer).

### III. DISCUSSION

This case has no meaningful connection to the Eastern District of Texas. All of the events relevant to Thompson's claims occurred at Lockheed's Fort Worth facility in Tarrant County, located within the Northern District of Texas. Unsurprisingly, then, most of the expected witnesses are also located in the Northern District. For these reasons, and as explained further below, the Court will transfer this case to the Northern District of Texas.

## A. Threshold Venue Inquiry

The threshold inquiry on a Section 1404(a) motion to transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). All eighteen of Thompson's claims, brought under six federal statutes, could have been brought in the Northern District of Texas. The Court addresses each statute's venue provision in turn.

Title VII and ADA claims may be brought (1) "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed"; (2) "in the judicial district in which the employment records relevant to such practice are maintained and administered"; (3) "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice"; or, if the respondent is not found within any of these districts, (4) "within the judicial district in which the respondent has his principal office." 42 U.S.C. § 2000e-5(f)(3); *see also Beavers v. Express Jet Holdings, Inc.*, 421 F.Supp.2d 994, 996 (E.D. Tex. 2005) (citing 42 U.S.C. § 12117) (explaining that Title VII's special venue provision applies to ADA claims). Here, Thompson could have brought his Title VII and ADA claims in the Northern District of Texas because (1) the alleged discrimination occurred there, (2) Thompson's employment records are maintained there, *see* (Dkt. #28-1 ¶ 2), and (3) Thompson would have continued to work there but for his allegedly unlawful firing.

USERRA claims may be brought in "any district in which the private employer of the person maintains a place of business." 38 U.S.C. § 4323(c)(2). Lockheed maintains a place of business in the Northern District of Texas—the Fort Worth facility at which Thompson worked—so Thompson could have brought his USERRA claims in that district.

Claims brought under the ADEA, FMLA, and Section 1981 are governed by the general venue statute, 28 U.S.C. § 1391.[1] Such claims may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Here, venue would have been proper in the Northern District of Texas under either the first or second category above: The Northern District has specific personal jurisdiction over Lockheed for purposes of this civil action, so Lockheed "resides" there. *See* 28 U.S.C. § 1391(c)(2) (explaining that a defendant entity resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question"). And

---

[1] *Martin v. Impact Health*, No. CV 23-2497, 2023 WL 7498175, at *4 (E.D. La. Nov. 13, 2023) (explaining that the general venue statute governs Section 1981 claims); *Myers v. Gibson*, No. 3-07-CV-864-B, 2007 WL 1953443, at *1 n.1 (N.D. Tex. July 2, 2007) (same, for the ADEA); *Fowler v. Deloitte & Touche, LLP*, No. CV 15-2695, 2017 WL 1293983, at *2 (W.D. La. Mar. 24, 2017) (same, for the FMLA).

all of the alleged discrimination giving rise to Thompson's claims occurred at Lockheed's Fort Worth facility located in the Northern District.

## B. The Public- and Private-Interest Factors

Having found that this case could have been brought in the Northern District of Texas, the Court will now analyze the private- and public-interest factors to determine whether Lockheed has demonstrated that the Northern District is a "clearly more convenient" forum for this case than the Eastern District of Texas.

Lockheed argues (and Thompson does not seriously dispute) that five of the eight factors are either inapplicable to this case or neutral. Those factors are the relative ease of access to sources of proof (private-interest factor one); the availability of compulsory process to secure the attendance of witnesses (private-interest factor two); the administrative difficulties flowing from court congestion (public-interest factor one); the familiarity of the forum with the law that will govern the case (public-interest factor three); and the avoidance of unnecessary problems of conflict of laws or in the application of foreign law (public-interest factor four). *See* (Dkt. #28 at 11–12 n.14); (Dkt. #34 at 5–7). The Court agrees and therefore treats these factors as neutral.

That leaves three factors in dispute: the cost of attendance for willing witnesses (private-interest factor three); all other practical problems that make trial of a case easy, expeditious, and inexpensive (private-interest factor four); and the

7

local interest in having localized interests decided at home (public-interest factor two).[2] The Court addresses each in turn.

### i. Cost for Willing Witnesses

Private-interest factor three, which focuses on the "cost of attendance for willing witnesses," *Volkswagen II*, 545 F.3d at 315, "is probably the single most important factor in transfer analysis," *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 329 (E.D.N.Y. 2006)). It is obviously more convenient for witnesses to testify closer to home, and additional distance means additional travel, meal, and lodging costs, as well as additional time away from the witnesses' regular employment. *Volkswagen II*, 545 F.3d at 317.

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (citation omitted). That is not to say, however, "that a transfer *within* 100 miles does not impose costs on witnesses or that such costs should not be factored into the

---

[2] Both Lokcheed and Thompson suggest that the plaintiff's choice of venue is a "factor" in the venue-transfer analysis, to be weighed against and alongside the eight private- and public-interest factors. *See* (Dkt. #28 at 13) (describing plaintiff's choice of venue as "the only factor that affirmatively weighs against" transfer); (Dkt. #34 at 7) (arguing that the private- and public-interest factors do not "outweigh the final factor of Plaintiff's choice"). That characterization is understandable but technically incorrect. While the plaintiff's choice of venue is certainly relevant to the venue-transfer analysis, it is not a "factor" in the traditional sense. *See IP Co., LLC v. Oncor Elec. Delivery Co., LLC*, No. 2:09-CV-37, 2009 WL 10677429, at *2 (E.D. Tex. Aug. 3, 2009). As explained above, there are eight venue-transfer factors, and the plaintiff's choice of venue is not one of them. "Instead, the plaintiff's choice of venue contributes to the defendant's burden to prove that the transferee venue is 'clearly more convenient' than the plaintiff's chosen venue." *Id.* (cleaned up).

venue-transfer analysis." *In re Radmax*, 720 F.3d at 289. It is only to say that the witness-cost factor "has greater significance when the distance is greater than 100 miles." *Id.*

Here, Lockheed identifies fourteen likely witnesses, including "the alleged harassers," "the alleged recipients of Thompson's alleged protected complaints," "the Security Captain who discovered Thompson's gun on site," "the persons who voted to terminate Thompson's employment," and "the human resources employee who was on the dismissal call." (Dkt. #28 at 12). According to Lockheed's records, eleven of the fourteen likely witnesses live in the Northern District of Texas, and many of those eleven are current employees of Lockheed who also work in the Northern District at Lockheed's Fort Worth facility. *See* (Dkt. #28-1 ¶¶ 12–13, 15–16, 18–23). Two of the fourteen live out of state. (Dkt. #28-1 ¶¶ 14, 24). Just one lives in the Eastern District of Texas, but even that witness works in the Northern District. *See* (Dkt. #28-1 ¶ 17).

In sum, the vast majority of expected witnesses either live or work in the Northern District—primarily in and around Fort Worth—and just one lives in the Eastern District. It follows that the Northern District's Fort Worth division is the more convenient venue for most witnesses. To be sure, the distance between the Plano and Fort Worth federal courthouses is less than 100 miles—45.5 miles by car, to be exact. But as anyone who has driven across the Dallas–Fort Worth metroplex can tell you, that is no small distance, especially during rush hour. You're often looking at about a two-hour round trip, several dollars in tolls, and certain frustration. *See Toll*

*Calculator*, North Texas Tollway Authority, https://www.ntta.org/toll-calculator (last visited June 5, 2026). Thus, the witness-cost factor weighs in favor of transfer.

### ii. All Other Practical Problems that Make Trial Easy, Expeditious, and Inexpensive

The fourth private-interest factor is "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. As explained above, trial in the Northern District would be easier and less expensive for the vast majority of expected witnesses.[3] And there is no reason to think that a transfer would frustrate judicial economy. This case is still at a relatively early stage, *see* (Dkt. #26), and the Court has not yet gained substantial familiarity with the merits of the case. Thus, this factor weighs in favor of transfer.

### iii. Local Interests

The second public-interest factor, which focuses on the local interest in having localized interests decided at home, "most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and the events that gave rise to a suit." *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022) (cleaned up). Important considerations include the location of the injury, witnesses, and the plaintiff's residence. *Id.* As the Fifth Circuit has made clear, "the place of the alleged wrong is one of the most important factors in venue determinations." *Id.* (cleaned up).

---

[3] In fact, it appears that trial in the Northern District would be slightly easier and less expensive for Thompson too. Thompson says he is domiciled in Argyle, Texas, which by car is several miles closer to the Fort Worth federal courthouse than it is to the Plano courthouse. *See* (Dkt. #36 at 3).

All of the events that gave rise to this suit occurred in the Northern District of Texas; none occurred in the Eastern District of Texas. Although both parties have some connection to the Eastern District—Thompson lives in Argyle, and Lockheed has an operations facility in Lufkin—those connections have nothing to do with this case. *See* (Dkt. #36 at 3). This case is about discrimination that allegedly occurred at Lockheed's Fort Worth facility in the Northern District of Texas. It is the Northern District, then, that has the greater interest in deciding the merits of this case. Thus, this factor weighs in favor of transfer.

*     *     *

In sum, three of the eight private- and public-interest factors weigh in favor of transfer, and none of the factors weighs against transfer. A motion to transfer venue should be granted if the moving party shows that one venue is "clearly more convenient" than the other. *In re Genentech*, 566 F.3d at 1342. The Court, having considered the facts and law, concludes that the Northern District of Texas, Fort Worth Division, is clearly the more convenient venue to resolve this action than the Eastern District of Texas.

### IV. CONCLUSION

For these reasons, Defendant Lockheed Martin Corporation's Motion to Transfer Venue, (Dkt. #28), is **GRANTED**.

It is therefore **ORDERED** that this case is **TRANSFERRED** to the United States District Court for the Northern District of Texas, Fort Worth Division.

**So ORDERED and SIGNED this 9th day of June, 2026.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE